IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 18-cr-30063 |
| RYAN DOUGLAS, | ) ) ) |
| Defendant. | ) ) |

### REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendant Ryan Douglas' Motion to Suppress (d/e 20) (Motion). For the reasons stated below, this Court recommends that the Motion should be DENIED.

### BACKGROUND

On November 6, 2018, a grand jury indicted Douglas on a charge of one count of knowingly and intentionally delivering 5 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Indictment (d/e 1). During the pre-indictment investigation of Douglas, law enforcement officers executed two search warrants. The first warrant authorized the search of a residence located at 1726 N. 16th Street, Quincy, Illinois (Residence Warrant), and the

second authorized the search of Douglas' cell phone (Phone Warrant) (collectively Warrants). Douglas challenges whether the law enforcement officers presented sufficient information to the Judges who issued the Warrants to establish probable cause to support the Warrants. Judges and magistrates may only issue warrants on a showing of probable Cause. U.S. Const. amend. IV and XIV. In this case, law enforcement officers presented affidavits (collectively Affidavits) to the Judge to demonstrate the existence of probable cause. The validity of each Warrant, therefore, rests solely on the strength of each Affidavit. United States v. Peck, 317 F.3d 754, 755 (7th Cir. 2003). The parties provided the Court with the Warrants and the Affidavits. The Court does not need additional evidence to resolve the Motion.[1]

THE WARRANT AFFIDAVITS

A.     The Affidavit for the Residence Warrant

On April 17, 2018 at 9:40 p.m., Quincy, Illinois, Police Inspector Justin Ebbing presented a Complaint for Search Warrant (Residence Warrant Affidavit) to a State Court Judge in Adams County, Illinois (First

---

[1] Each party also provided additional information in the Motion and the Government's Response (d/e 21). The Court focuses only on the affidavits because the existence of probable cause depends solely on them. Peck, 317 F.3d at 755.

Judge).² Ebbing requested the Residence Warrant to search for certain specific currency totaling $500 identified as four one hundred dollar bills with serial numbers MB88183501E, LG00252027A, LD53143409C, and DC11715024A, one fifty dollar bill with serial number MF08650714B, two twenty dollar bills with serial numbers IG04586035B and ME24660692G, and one ten dollar bill with serial number MG11522896; methamphetamine; cocaine; drug paraphernalia; additional U.S. currency; drug ledgers; and cell phones as evidence of unlawful delivery of methamphetamine. Ebbing stated the following under oath in the Residence Warrant Affidavit to support the request for the Residence Warrant. Ebbing used several acronyms in both Affidavits. The acronyms have the following meanings: LE means law enforcement; CS means confidential source; IL means Illinois; USC means United States Currency; OAF means Official Advance Funds; and WCITF means the West Central Illinois Drug Task Force.

> Complainant says that he had probable cause to believe, based upon the following facts, that the above listed things to be seized are now located as set forth above:
>
> 1. That I am a Quincy Police Officer and have been so employed for more than five years. I am currently assigned to the West Central IL Drug Task Force. I have received training in the identification of different illegal

---

² The parties do not identify the Judges who executed the Warrants and the signatures are not sufficiently legible to determine their names.

narcotics and controlled substances and I have been a part of well in excess of two hundred (200) drug cases.

2.  I have received training in drug investigations, including the identification of controlled substances, method and items used to sell illegal narcotics, and the ways in which the drug is consumed.

3.  On or about the month of January 2018 the West Central Illinois Task Force began receiving information in reference to Ryan Douglas selling methamphetamine and cocaine in the Quincy, Adams County area. Law enforcement received information Douglas was traveling to Burlington Iowa to purchase controlled substance and bring them back to Quincy, IL. LE received information Douglas commonly drove a black BMW which was registered to his girlfriend Amanda Nieders. LE received this information from multiple confidential sources.

4.  In the month of February of 2018 LE conducted a controlled purchase of one gram of cocaine at 934 Payson Street in Quincy, Adams County, IL. During the controlled purchase LE observed a black BMW bearing Illinois registration AB86683 arrive at the location of the purchase. During a debrief of the CS they stated the target used their phone to contact the source of supply. The phone number they contacted was 217-305-3830. The CS advised the source of the supply arrived in the black BMW.

5.  Also in February of 2018 LE conducted a controlled purchase of 1.6 grams of methamphetamine. During this transaction the CS picked up the target and the target directed the CS to drive them to the bar at 17th and Locust. Upon their arrival a black BMW arrived and parked next to the CS. The target got out of the CS vehicle and got into the black BMW. A short time later the target got back into the CS vehicle and the CS dropped the target back off at his residence. The CS believed the driver of the black BMW to be Ryan Douglas.

6.  Within the last 72 hours LE conducted a controlled purchase from Ryan Douglas. The confidential source was searched and no contraband was located. The CS was then provided $500 USC OAF along with a covert recording device. The CS placed a phone call to Douglas at phone number 217-305-3830. Douglas advised he was leaving the store and would be at the predetermined meeting location shortly. Approximately 10 minutes later Inspector Hiland observed the black BMW pull into the driveway of 1726 N. 16th.  Inspector Hiland observed Douglas take several items into the house. Douglas then got back into the black BMW and proceeded to the predetermined meeting location.  Once there the CS stated Douglas met with several people.  The CS then got into Douglas' vehicle.  The CS provided Douglas with the $500 USC OAF and Douglas provided the CS with a knotted baggie of crystal substance.  Douglas then left the area.  LE conducted surveillance and observed Douglas travel directly back to 1726 N. 16th.  Inspector Hiland then observed Douglas go inside the residence.  Officer Bemis and I then picked the CS up and took them to the WCITF office.  The CS was searched again and no contraband was located.

7.  The crystal substance the CS purchased from Douglas weighed greater than 5 grams and field test positive for methamphetamine.

8.  The serial numbers of the USC OAF provided to Douglas by the CS are as follows:  four one hundred dollar bills with serial numbers MB88183501E, LG00252027A, LD53143409C, and DC11715024A, one fifty dollar bill with serial number MF08650714B, two twenty dollar bills with serial numbers IG04586035B and ME24660692G, and one ten dollar bill with serial number MG11522896B.

9.  Douglas has a conviction for delivery of cocaine in 10CF433 and delivery of controlled substance in 09CF65.

10. I am aware the CS has a felony conviction and their criminal history was supplied to the Judge at the time of signing.

<u>Motion</u>, Exhibit A, <u>Residence Warrant and attached Residence Warrant Affidavit</u>. The First Judge issued the Residence Warrant.

    B.    <u>The Affidavit for the Phone Warrant</u>

On April 18, 2018 at 10:43 a.m., Inspector Ebbing presented the Complaint for Search Warrant (Phone Warrant Affidavit) to a different State Court Judge in Adams County, Illinois (Second Judge). Ebbing asked for a warrant to search Douglas' cell phone, an iphone S model number A1688 for all data on the device and removable media. Ebbing stated the following under oath in the Phone Warrant Affidavit to support the request for the Phone Warrant.

> Complainant says that he had probable cause to believe, based upon the following facts, that the above listed things to be seized are now located as set forth above:
>
> 1) That I am a Quincy Police officer and have been so employed for more than 5 years. I am currently assigned to the West Central Illinois Task Force. I have received training in the identification of different illegal narcotics and controlled substances and I have been a part of in excess of two hundred (200) drug cases.
>
> 2) I have received training in drug investigations, including the identification of controlled substances, methods and items used to sell illegal narcotics, and the ways in which the drug is consumed.

3)     Within the last 72 hours law enforcement conducted a controlled purchase from Ryan Douglas. The confidential source was searched and no contraband was located. The CS was then provided $500 USC OAF along with a covert recording device. The CS placed a phone call to Douglas at phone number 217-305-3830. Douglas advised he was leaving the store and would be at the predetermined meeting location shortly. Approximately 10 minutes later Inspector Hiland observed the black BMW pull into the driveway of 1726 N. 16th. Inspector Hiland observed Douglas take several items into the house. Douglas then got back into the black BMW and proceeded to the predetermined meeting location. Once there the CS stated Douglas met with several people. The CS then got into Douglas' vehicle. The CS provided Douglas with the $500 USC OAF and Douglas provided the CS with a knotted baggie of crystal substance. Douglas then left the area. LE conducted surveillance and observed Douglas travel directly back to 1726 N. 16th. Inspector Hiland then observed Douglas go inside the residence. Officer Bemis and I then picked the CS up and took them to the WCITF office. The CS was searched again and no contraband was located.

4)     On 04/18/18 LE conducted surveillance on 1726 N. 16th. Officers observed Douglas leaving in the black BMW bearing Illinois registration AB86683. At the intersection of 18th and Locust Douglas crossed the solid white line that separates the turn lane from the through lane. At the intersection of 24th and Locust Douglas again crossed the painted white line that separates the turn lane from the through lane and failed to signal 100 feet from the intersection. A traffic stop was conducted.

5)     While the traffic stop was being conducted additional Officers executed a search warrant at 1726 N. 16th. Located in the residence was approximately $7,500 USC with some of it being official advanced funds. Officers also located plastic baggies, digital scales, and inositol powder.

6) Douglas was placed under arrest and his vehicle was seized. Located during the traffic stop was Douglas' cell phone.

7) Law enforcement began receiving information from confidential sources in January of 2018 regarding Douglas selling controlled substances.

8) I am requesting to search from 01/01/18 to present.

Motion, Exhibit B, Phone Warrant and attached Phone Affidavit. The Second Judge issued the Phone Warrant.

Law enforcement officials executed both Warrants and found evidence relevant to the charge in the Indictment. Douglas asks the Court to suppress the "fruits" of those searches. Motion, at 16.

## ANALYSIS

Great deference is given to the judge deciding whether to issue a warrant. United States v. Yarber, 915 F.3d 1103, 1105 (7th Cir. 2019). The issuing judge must "make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Curry, 538 F.3d 718, 729 (7th Cir. 2008) (quoting United States v. Koerth, 312 F3d 862, 865 (7th Cir. 2002) (ellipsis in the Curry opinion)). The evidence should show a fair probability that the evidence or contraband would be found at the time of the search. Edmond

v. United States, 899 F.3d 446, 454 (7th Cir. 2018).  The evidence presented to the judge does not need to be direct evidence such as personal observations that fruits of the crime or other evidence will be found in the location specified.  Rather, the issuing judge is entitled to draw reasonable inferences about where evidence is likely to be kept.  United States v. Anderson, 450 F.3d 294, 303 (7th Cir. 2006); United States v. Singleton, 125 F.3d 1097, 1102 (7th Cir. 1997); United States v. Sleet, 54 F.3d 303, 306 (7th Cir. 1995); United States v. Lamon, 930 F.2d 1183, 1187,88 (7th Cir. 1991).  The Judge "need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." Sleet, 54 F.3d at 306 (quoting United States v. Malin, 908 F.2d 163, 165 (7th Cir. 1990)).

A.    The Residence Warrant

The Residence Affidavit established that Douglas engaged in a pattern of criminal activity: on three occasions in February 2018 purchasers or intermediaries contacted Douglas by phone to arrange a controlled buy of illegal drugs at a designated location; Douglas arrived at the designated location in the black BMW; the purchaser or intermediary entered the black BMW as part of the process to complete the sale; and Douglas left in the black BMW after the controlled buy was completed.

The Residence Affidavit established that the last controlled buy occurred within 72 hours of the application for the Residence Warrant.  In that transaction, the CS called Douglas to arrange the controlled buy.  Douglas said he was at the store and would be at the agreed location shortly.  Ten minutes later Douglas arrived at the Residence in the black BMW, took several items into the Residence, and left in the black BMW.  Douglas arrived at the predetermined location in the black BMW.  The CS entered the black BMW.  The CS gave the $500 of Official Advance Funds to Douglas, and Douglas distributed the methamphetamine to the CS.  The CS exited the black BMW, and Douglas immediately drove directly back to the Residence.  Upon arriving at the Residence, Douglas exited the black BMW and entered the Residence.

The evidence shows a connection between Douglas, his drug dealing, and the Residence.  Douglas left a store and proceeded to the Residence and took several items into the Residence.   The issuing Judge could conclude from this behavior that Douglas had some connection to the Residence.  Douglas also went to the Residence after he received the CS's call and before the controlled buy.  Douglas then returned to the Residence immediately after completing the controlled buy.  The fact that Douglas returned to the Residence a second time in the same day provided further

confirmation that Douglas had a connection to the Residence. The fact that Douglas went to the Residence immediately before and immediately after the drug transaction showed a connection between his drug trafficking and the Residence. The totality of the circumstances supported an inference that Douglas had a significant connection to the Residence and that Douglas used the Residence in connection with his illegal drug sales. As such, the issuing Judge could reasonably conclude that a fair probability existed that evidence of Douglas' illegal drug transactions could be found in the Residence. Cf. Yarber, 915 F.3d 1103, 1106 (7th Cir. 2019) (fact that drug dealer went directly to a residence immediately after two drug transactions was a factor that supported a finding of probable cause to search the residence). The Court finds that the Residence Warrant Affidavit provided sufficient evidence to establish probable cause to search the Residence.

Douglas argues that Yarber does not support a finding of cause here. In Yarber, the affidavit stated that the defendant used a white Dodge Charger to conduct four controlled buys. The defendant in Yarber drove to the same residence twice immediately after two of the controlled buys. 915 F.3d at 1105-06. Douglas points out that the Yarber Court said that the case was far from open and shut, and that a residence is not subject to

search just because a defendant traveled to the location after a drug sale. Id. The Court agrees that when the proof for probable cause is circumstantial evidence in an affidavit, then the case is not necessarily a "slam dunk." A slam dunk certainty, however, is not the standard to demonstrate probable cause. Here, unlike Yarber, Douglas went to the Residence both immediately before and immediately after the controlled buy. Douglas' travel both to and from the Residence, both before and after the controlled buy shows a greater connection of the Residence to Douglas' drug activity than the facts in Yarber. In addition, Douglas also took several items into the Residence after he left the store. This action would support the inference that Douglas kept things at the Residence. The totality of the circumstances showed that the Residence was not just some place Douglas happened to go after the drug transaction. The evidence supports the inference that Douglas kept things at the Residence and that he used the Residence in connection with his illegal drug transactions. He went to the Residence immediately before the controlled buy and went directly back to the Residence immediately after the controlled buy. The evidence supports an inference of a nexus between the Residence and Douglas' illegal drug trafficking.

Douglas also argues that the information was stale because the last transaction with the CS occurred up to 72 hours before Ebbing submitted the application. Douglas cites Edmond v. United States, 899 F.3d 446, 454 (7th Cir. 2018), to support this proposition. In Edmond, the affidavit for the warrant was deemed deficient because it did not include any timeframe of when the informant purchased drugs from the defendants. Id. at 451. Here, the Residence Warrant Affidavit stated that the controlled buy occurred within 72 hours of the application. Furthermore, the Residence Warrant Affidavit established that Douglas was engaged in an ongoing business of drug trafficking. "Indications of 'ongoing, continuous criminal activity' render 'the passage of time . . . less critical' to the probable cause analysis." Id. at 455 (quoting Lamon, 930 F.2d at 1188). The passage of 72 hours was not significant in light of Douglas' ongoing drug trafficking. The information in the Residence Warrant Affidavit was not stale.

Moreover, even if the Residence Warrant Affidavit did not establish probable cause, the officers acted in good faith in reliance on the Residence Warrant when they searched the Residence. Evidence found by officers acting in good faith reliance on a facially valid warrant is not subject to the exclusionary rule. United States v. Leon, 468 U.S. 897, 920-24 (1984). The Residence Warrant was facially valid, and the officers are

presumed to have acted in good faith. To rebut the presumption, Douglas must demonstrate: "(1) that the issuing judge abandoned his or her detached and neutral role, (2) the officers were dishonest and reckless in preparing the affidavit, or (3) the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable." United States v. Searcy, 664 F.3d 1119, 1124 (7th Cir. 2011). Douglas makes no claim that the officers acted dishonestly or recklessly in preparing the Residence Warrant. See United States v. Hunter, 86 F.3d 679, 682 (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978). The Court further sees no evidence that the First Judge abandoned his or her detached and neutral role.

The Residence Warrant also was not so lacking in probable cause to render the officers' belief entirely unreasonable. The evidence presented clearly showed Douglas sold illegal drugs and showed a connection between Douglas' illegal sales and the Residence. Douglas had a connection to the Residence independent of the drugs sales. When he left the store, he returned to the Residence and took several items from the BMW into the Residence. Douglas also had a connection to the Residence during his drug sales. He went to the Residence immediately before and immediately after the last controlled buy. Given these connections, the

officers' belief that the Warrant was supported by probable cause was not entirely unreasonable. The request to suppress the evidence found in the Residence should be denied.

B.      The Phone Warrant

The Phone Warrant Affidavit presented evidence that Douglas used a cell phone to arrange illegal drug transactions. Ebbing presented the Phone Warrant Affidavit on April 18, 2018. Within 72 hours before that application, the CS called Douglas to arrange for a controlled buy of illegal drugs. Douglas told the CS that he was in a store when CS called. The fact that Douglas could answer the phone while he was in a store indicates that Douglas spoke to the CS using cell phone, not a landline. Shortly thereafter, officers gave CS $500 in official advance funds to make the controlled buy. CS then met Douglas and completed the controlled buy. CS gave Douglas the official advance funds and Douglas gave CS a baggie with a crystalline substance.

On April 18, 2018, the officers followed Douglas and conducted a traffic stop when Douglas violated the traffic laws. At the same time, other officers executed the Residence Warrant and searched the Residence. The search turned up the official advance funds and other evidence of drug trafficking. Douglas was arrested and his cell phone was taken in a search

incident to arrest. Based on this evidence, the Second Judge could reasonably conclude that Douglas used a cell phone to arrange the controlled buy, and when he was arrested, Douglas had the cell phone that Ebbing wanted to search. The Second Judge could very reasonably conclude that "a fair probability" existed "that . . . evidence of a crime" could be found in the data on Douglas' cell phone. Curry, 538 F.3d at 729.

Douglas argues that the Phone Warrant Affidavit did not expressly state that Douglas used a cell phone to arrange the controlled buy. The issuing judge is entitled to draw reasonable inferences from the affidavit. Anderson, 450 F.3d at 303. In this case, the issuing Judge could reasonably infer that Douglas used a cell phone to answer CS's call while Douglas was in a store. Douglas could not have used his home landline to answer a call while shopping in a store. The Phone Warrant Affidavit provided sufficient information to established that Douglas used a cell phone to arrange the controlled buy. The issuing Judge could reasonably believe that Douglas' cell phone was likely to have evidence of that call. The Phone Warrant Affidavit was based on probable cause.

Even if somehow the Phone Warrant Affidavit did not establish probable cause, the officers acted in good faith reliance on the facially valid warrant. Douglas presents no evidence to overcome the presumption that

the officers acted in good faith. The exclusionary rule, therefore, does not apply in this case even if the Phone Warrant was not supported by probable cause.

THEREFORE, THIS COURT RECOMMENDS that Defendant Ryan Douglas' Motion to Suppress (d/e 20) should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See Local Rule 72.2.

ENTER: September 11, 2019

*s/ Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE