UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cr-30063 |
| | ) | |
| RYAN DOUGLAS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Tom Schanzle-Haskins (d/e 23) entered on September 11, 2019 relating to a Motion to Suppress Evidence (d/e 20) filed by Defendant Ryan Douglas. Defendant filed Objections to the Report and Recommendation (d/e 24). The Government did not file a response to the Objection.

In the Report and Recommendation, the Magistrate Judge recommends that this Court deny Defendant's Motion to Suppress Evidence. For the reasons set forth below, the Court OVERRULES Defendant's Objections (d/e 24) and ACCEPTS and ADOPTS the

Magistrate Judge's Report and Recommendation (d/e 23) to deny Defendant's Motion to Suppress (d/e 20).

## I. BACKGROUND

The Court adopts Judge Schanzle-Hankins' Statement of Facts with additional facts noted below by citation.

To summarize, law enforcement launched an investigation against Ryan Douglas in 2018, which included obtaining and executing two search warrants. The first search warrant authorized the search of a residence located at 1726 N. 16th Street, Quincy, Illinois ("Residence Warrant"). In pertinent part, the affidavit supporting the Residence Warrant provided that the West Central Illinois Task Force began receiving information in reference to Ryan Douglas selling methamphetamine and cocaine in the Quincy, Adams County area. See d/e 20-1 p. 2 of 3. Defendant commonly drove a black BMW, which was registered to his girlfriend, Amanda Nieders. See id. In February 2018, law enforcement conducted a controlled purchase of one gram of cocaine at 934 Payson Street, Quincy, Illinois. The confidential source told law enforcement that during the purchase, the seller (identified as "target" in the affidavit) used a phone to contact the source of supply, and the phone

number the seller called was 217-305-3830.  The confidential source stated that the source of supply arrived in the black BMW. During the controlled purchase, law enforcement observed a black BMW with an Illinois license plate number AB86683 arrive at the location of the purchase.  See id.

Again in February, law enforcement made a controlled purchase of methamphetamine near 17th and Locust.  A black BMW arrived and parked next to the confidential source, and the dealer (again referred to as "target" in the affidavit) got out of the confidential source's car and into the black BMW.  The dealer returned to the confidential source's vehicle after a short time.  The confidential source believed the driver of the black BMW was Ryan Douglas.

Of importance is Paragraph 6 of the affidavit to the Residential Warrant.  It provides in full:

> 6.  Within the last 72 hours LE conducted a controlled purchase from Ryan Douglas.  The confidential source was searched and no contraband was located.  The CS was then provided $500 USC OAF along with a covert recording device.  The CS placed a phone call to Douglas at phone number 217-305-3830.  Douglas advised he was leaving the store and would be at the predetermined meeting location shortly.  Approximately 10 minutes later Inspector Hiland observed the black BMW pull into the

driveway of 1726 N. 16th. Inspector Hiland observed
Douglas take several items into the house. Douglas then
got back into the black BMW and proceeded to the
predetermined meeting location. Once there the CS
stated Douglas met with several people. The CS then got
into Douglas' vehicle. The CS provided Douglas with the
$500 USC OAF and Douglas provided the CS with a
knotted baggie of crystal substance. Douglas then left
the area. LE conducted surveillance and observed
Douglas travel directly back to 1726 N. 16th. Inspector
Hiland then observed Douglas go inside the residence.
Officer Bemis and I then picked the CS up and took them
to the WCITF office. The CS was searched again and no
contraband was located.

See id., p. 3 of 3. The affidavit for the Residence Warrant went

on to provide that the crystal substance purchased from

Defendant weighed greater than 5 grams and tested positive

for methamphetamine and listed the serial numbers for the

United States Currency Official Advance Funds. See id.

Additionally, the affidavit provided that Defendant "has a

conviction for delivery of cocaine in Case No. 10CF433 and a

delivery of controlled substance in 09CF65," and the

confidential source "has a felony conviction and their criminal

history was supplied to the Judge at the time of signing" the

warrant. See id.

The signing judge issued the Residence Warrant at 9:41 p.m. on April 17, 2018.  See id., p. 1 of 3.

The next morning, a search warrant for Defendant's cell phone ("Cell Phone Warrant') was presented to a different judge from Adams County, Illinois.  The search warrant was for the cell phone of Ryan R. Douglas, being an iPhone S, model number A1688, with a black rubber case, to seize "all data on the device and removable media . . ." which have been used in the commission of, or which constitute evidence of, the offenses of delivery of methamphetamine.  See d/e 20-2, p. 1 of 3.

The Cell Phone Warrant contained the same Paragraph 6 as noted above with only one slight variation, which stated "law enforcement" instead of abbreviating it as "LE" in the first sentence.  The warrant also provides that on April 18, 2018, law enforcement conducted surveillance on 1726 N. 16th, and officers observed Defendant leaving in the black BMW.  See id., p. 2 of 3.  Soon after, officers conducted a traffic stop of the black BMW.  See id., p. 3 of 3.  While the traffic stop was being conducted, officers executed a search warrant at 1726

N. 16th, where law enforcement found $7,500 with some of it being official advanced funds, plastic baggies, digital scales, and inositol powder.  See id.

Thereafter, Defendant was placed under arrest and his vehicle was seized.  See id.  During the traffic stop, Defendant's cell phone was located.  The warrant requested a search of the cell phone from 01/01/18 to the present.  The Cell Phone warrant was issued at 10:43 a.m. on April 18, 2018.  See id., p. 1 of 3.

On November 6, 2019, Defendant was indicted by a grand jury for one count of knowingly and intentionally delivering 5 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  See Superseding Indictment, d/e 26.

Defendant filed a Motion to Suppress arguing that both search warrants lacked probable cause, and, therefore, the items and information seized during the searches should be suppressed.  See d/e 20.  Said motion is the subject of Judge Schanzle-Haskins' Report and Recommendation at issue here.  Defendant argues that the Residence Warrant lacked probable cause because the affidavit

did not make a connection between Defendant and the residence.
Defendant also argues that the affidavit to the Cell Phone Warrant
did not support the inference that the phone Defendant had with
him at the time of his arrest was the same phone he used
previously during the controlled buy and that the phone he used
was a cell phone.

The Government filed a response in opposition to Defendant's
motion arguing that the warrants were supported by affidavits that
established probable cause to believe that evidence of a crime might
be located at 1726 N. 16th Street and on Defendant's cell phone.
See d/e 21.  In the alternative, the Government argues that the
officers relied on the search warrants in good faith and the evidence
obtained as a result of the searches is not subject to suppression.
See d/e 21.

In the Report and Recommendation, Magistrate Judge
Schanzle-Haskins recommends that this Court deny Defendant's
Motion.  See d/e 23.  After consideration of the arguments
presented, Magistrate Judge Schanzle-Haskins concluded that the
affidavit to the Residence Warrant provided sufficient evidence to
establish probable cause to search the Residence.  Magistrate

Judge Schanzle-Haskins found that the totality of the circumstances supported an inference that Defendant had a significant connection to 1726 N. 16th Street and his drug dealings as he went to the residence immediately before the controlled buy and went directly back to the residence immediately after the controlled buy. Magistrate Judge Schanzle-Haskins also found that the affidavit established that the controlled buy happened in the last 72 hours of the application and, regardless, Defendant engaged in a pattern of criminal activity, which renders passage of time less critical.

Additionally, Magistrate Judge Schanzle-Haskins concluded that, based on the evidence, the judge issuing the Cell Phone Warrant could reasonably conclude that Defendant used a cell phone to arrange the controlled buy, and when arrested, Defendant had the cell phone that law enforcement wanted to search.

Further, even if the affidavit had lacked probable cause, Magistrate Judge Schanzle-Haskins found that the officers acted in good faith in reliance on the Residence Warrant when they searched the 1726 N. 16th Street and Defendant failed to rebut the presumption that the officers acted in good faith.

On September 25, 2019, Defendant filed his Objections to Report and Recommendation. See d/e 24. Defendant raised many of the same arguments as he did in his Motion to Suppress. See d/e 20. Specifically, Defendant objects to Magistrate Judge Schanzle-Haskins' finding that both warrants were supported by probable cause and, alternatively, that the good faith exception to the exclusionary rule applies.

## II. ANALYSIS

This Court must review de novo those portions of the Report and Recommendation to which timely objections are made. Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1). This Court may "accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate with instructions." Fed. R. Crim. P. 59(b)(3). After reviewing the Report and Recommendation, the Court denies the Defendant's Objections and adopts Magistrate Judge Schanzle-Haskins' Report and Recommendation.

### A. Search Warrants.

Reviewing courts give great deference to an issuing judge's determination of probable cause and should "uphold that determination so long as there is a 'substantial basis' for concluding

'that a search would uncover evidence of wrongdoing.'" <u>United States v. Yarber</u>, 915 F.3d 1103, 1105 (7th Cir. 2019) (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 236 (1983)).  "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime."  <u>United States v. Searcy</u>, 664 F.3d 1119, 1122 (7th Cir. 2011).

The validity of a warrant rests solely on the strength of the affidavit when an affidavit is the only evidence presented to a judge in support of a search warrant.  <u>United States v. Peck</u>, 317 F.3d 754, 755 (7th Cir. 2003).  The issuing judge is tasked with making a commonsense decision, based on all the circumstances, that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." <u>United State v. Curry</u>, 538 F.3d 718, 729 (7th Cir. 2008).

## 1.    The Residence Warrant Was Based on Probable Cause.

Defendant argues that the affidavit supporting the Residence Warrant lacked probable cause as it did not establish a nexus between Defendant and 1726 N. 16th Street to support a finding that defendant would store illegal drugs at this house. Magistrate

Judge Schanzle-Haskins found that the affidavit contained probable cause and did in fact establish a nexus between Defendant and 1726 N. 16th Street. The Court agrees with Magistrate Schanzle-Haskins' determination.

Establishing probable cause "does not require direct evidence linking a crime to a particular place." United States v. Zamudio, 909 F.3d 172, 175 (7th Cir. 2018) (quoting United States v. Anderson, 450 F.3d 294, 303 (7th Cir. 2006)). An issuing court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. United States v. Lamon, 930 F.2d 1183, 1188 (7th Cir. 1991) (quoting United States v. Angulo–Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986)).

In his Objection, Defendant argues that the Report and Recommendation incorrectly found that the Residence Warrant was supported by probable cause because the supporting affidavit has no nexus between the residence and Defendant's criminal conduct. Specifically, Defendant believes the supporting affidavit is insufficient as it did not state that the residence is Defendant's

residence and the affidavit only states that Defendant went to the house before and after a controlled buy.

To support his position, Defendant relies on United States v. Yarber, 915 F.3d 1103 (7th Cir. 2019). In Yarber, law enforcement obtained a search warrant to search two apartments connected to the defendant, Yarber. Id. at 1104. According to the affidavits presented to the Champaign County Circuit Court judge, a confidential source bought cocaine from Yarber on four occasions near the same intersection in Champaign. Id. Each time, Yarber drove a white Dodge Charger, which was registered to his girlfriend. Id. Immediately following two of the controlled buys, Yarber drove to his girlfriend's apartment in Champaign. Id. The police also surveilled the apartment on three additional occasions, and all three times they saw the white Dodge Charger parked in front. Id. On one occasion, they saw Yarber exit the Dodge Charger and go inside the apartment. Id. The affidavit did not say that Yarber lived at the Champaign apartment or that he stayed overnight at the apartment. Id. at 1105. In fact, the affidavit referenced another apartment in Urbana as Yarber's residence. Id. The issuing judge

found the affidavit established probable cause to search the Champaign apartment.  Id.

The district court denied a motion to suppress the search warrant, finding that the search warrant connected Yarber and the white Dodge Charger to the apartment as police saw him drive there immediately after two of the four controlled buys.  Id.  Further, the district court found that the issuing judge could have inferred that Yarber kept evidence of his drug dealing in his girlfriend's apartment.  Id.  In the alternative, the district court determined that the good faith exception applied.   Id.

The Seventh Circuit affirmed, holding that probable cause existed based on the fact that the search warrant expressly authorized a search for the proceeds of drug sales, Yarber went directly to his girlfriend's apartment after two of the controlled buys, and additional surveillance tied Yarber to his girlfriend's apartment and car.  Id. at 1106.  However, the Seventh Circuit held that the affidavit did not support an inference that evidence of his drug dealing would be kept at the apartment because the affidavit did not support the inference that Yarber lived at the Champaign

apartment, but instead, the affidavit said Yarber lived at an apartment in Urbana.  Id.

Defendant's reliance on Yarber, in that it supports suppressing the evidence, is misplaced.   In Yarber, the defendant went to the searched apartment after two controlled purchases, which the Seventh Circuit found "most significant[]."  Id. at 1105. In this case, Defendant went to the Residence immediately before and immediately after the controlled buy.  A confidential source placed a phone call to Defendant, and Defendant stated that he was leaving the store.  Approximately ten minutes later, law enforcement observed Defendant pull into the driveway of the Residence in the black BMW and take several items into the house. Thereafter, Defendant exited the Residence, got back in the black BMW, and drove to the predetermined meeting location.  After the controlled purchase, Defendant left.  Law enforcement observed Defendant travel directly back to the Residence, which he entered upon arriving.

Defendant objects to the Report and Recommendation arguing that Yarber stands for the position that traveling to a location on one day "does not establish a sufficient nexus between the location

and the defendant's drug activity to support a reasonable inference that evidence of drug dealing will be found at the location." <u>See</u> d/e 24, pg. 3 of 13.  The Court does not agree with this reading of <u>Yarber</u>.  Although <u>Yarber</u> warned that any place to which a suspected drug dealer travels after a drug sale is not subject to a search, the <u>Yarber</u> Court looked to the totality of the circumstances.

As stated in <u>Yarber</u>, the issuing judge "was entitled to draw the reasonable inference that an experienced drug dealer might maintain cash proceeds from drug sales within the [residence] he visited immediately after the sales . . . rather than on his person or in a car." <u>Id.</u> at 1106.  The same is true here.  Defendant's actions would support the inference that Defendant kept things at the Residence and that Defendant might maintain cash proceeds from the drug sale at the Residence.  This evidence supports an inference of a nexus between the Residence and Defendant's illegal drug trafficking.  The Residence Warrant authorized the search for the proceeds of the sale.  Based on the totality of the circumstances detailed in the affidavit, it was reasonable for the issuing judge to believe that a search would uncover evidence of Defendant's drug trafficking, including the sale proceeds.

The Government argues that the issuing judge could draw the inference that evidence of drug dealing is likely to be found where the dealer lives. However, similar to Yarber, such an inference is improper in this case. See Yarber, 915 F.3d at 1106. The affidavit gave no indication that Defendant lived at the residence. The affidavit was silent as to who owned the residence or where Defendant lived. Therefore, the issuing judge could not rely on such an inference here.

Defendant contends that the affidavit lacked probable cause because it did not state who owned the Residence, whether Defendant lived at the Residence, or whether Defendant had a long-term connection to the Residence. Such statements are not required for an affidavit supporting a search warrant. The affidavit is not required to have direct evidence linking a crime to a particular place. See Zamudio, 909 F.3d at 175.

In Defendant's Motion to Suppress, he also argues that the search warrant was stale. Magistrate Judge Schanzle-Haskins found that the information in the affidavit to the Residence Warrant was not stale. Further, Magistrate Judge Schanzle-Haskins found that the affidavit established that Defendant was engaged in an

ongoing business of drug trafficking. In his Objection to the Report

and Recommendation, Defendant argues that even if the affidavit

established ongoing drug activity, the affidavit did not link the place

to be searched with the drug activity. As Defendant explains, "even

if the issuing magistrate could reasonbl[y] infer Mr. Douglas was

engaged in ongoing drug activity[,] there was no information linking

the place to be search[ed] to the drug activity other than Mr.

Douglas' presence at the location on one day." See d/e 24, p. 7 of

13.

Defendant is relying on the case of Edmond v. United States,

899 F.3d 446, 454 (7th Cir. 2018), for the proposition that 72 hours

does not establish a fair probability that the buy money would be

located at the Residence. See d/e 20, p. 9 of 17. In Edmonds, the

Seventh Circuit held that the affidavit to the search warrant

contained temporal deficiencies, but the complaint was not so

lacking in indicia of probable cause as to render a police officer's

reliance on the validity of the warrant objectively unreasonable. Id.

at 456-57. The analysis turned on the five-factor test for when a

complaint is based on an informant's tip. Id. at 453. The temporal

factor, specifically "the interval of time between the reported events

and the warrant application," is just one of the factors.  Id. at 453-54.  In that case, the affidavit supporting the search warrant did not include any timeframe for when the informant purchased drugs from the defendants.  However, based on the totality of the circumstances, the court found that the good faith exception applied.  Id. at 458.

Here, the affidavit to the Residence Warrant stated that "[w]ithin the last 72 hours LE conducted a controlled purchase from Ryan Douglas."  See d/e 20-1, p. 3 of 3.  That is opposite from the situation in Edmonds where there was no time specified.  The Court finds that the affidavit in this case was not stale.

Further, as noted by Magistrate Judge Schanzle-Haskins, the affidavit also supports a finding of ongoing, continuous criminal activity.  "[I]f a complaint indicates 'ongoing, continuous criminal activity, the passage of time becomes less critical.'" Edmonds, 899 F.3d at 454 (quoting Lamon, 930 F.2d at 1188).  The affidavit establishes that law enforcement received information that Defendant was trafficking methamphetamine and cocaine in the Quincy, Illinois area and Defendant commonly drove a black BMW. The black BMW was seen at the place of purchase during two

controlled purchases in February 2018. Thereafter, law enforcement saw Defendant drive the black BMW to and from the controlled purchase in April of 2018 where Defendant sold a crystal substance to the confidential source. The information contained in the affidavit supports a finding of ongoing, continuous criminal activity, which would make the passage of time less important. See Edmonds, 899 F.3d at 454. Irrespective, the totality of the circumstances support a finding that the affidavit contains indicia of timeliness. As discussed in more detail below, the affidavit was not so lacking in probable cause as to render law enforcement's reliance on the validity of the warrant objectively unreasonable.

**2. The Cell Phone Warrant Was Based on Probable Cause.**

Magistrate Judge Schanzle-Haskins found that the Cell Phone Warrant was based on probable cause. Defendant argues that the Cell Phone Warrant was not based on probable cause because the affidavit contained no facts to support the inference that the cell phone on Defendant's person on the day of his arrest was the same cell phone used three days prior on the day of the controlled buy. Defendant also argues that the affidavit lacked evidence that the

phone used prior to the controlled buy was a cell phone versus a landline phone.

Generally, law enforcement may not search digital information on a cell phone seized from an individual who has been arrested without a warrant.  Riley v. California, 573 U.S. 373 (2014).  "While the general rule allowing warrantless searches incident to arrest 'strikes the appropriate balance in the context of physical objects, neither of its rationales has much force with respect to' the vast store of sensitive information on a cell phone."  Carpenter v. United States, 138 S. Ct. 2206, 2214 (2018) (quoting Riley, 573 U.S. at 386).

The issuing judge is tasked with making a commonsense decision, based on all the circumstances, that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." United State v. Curry, 538 F.3d 718, 729 (7th Cir. 2008).

Defendant arguesthat the affidavit lacked evidence that the phone used prior to the controlled buy was a cell phone.  The affidavit to the Cell Phone Warrant states that "the CS placed a phone call to Douglas at phone number 217-305-3830.  Douglas

advised he was leaving the store and would be at the predetermined meeting location shortly." See d/e 20-2, p. 2 of 3. The issuing judge "is entitled to draw reasonable inferences about where evidence is likely to be kept" and "need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." United States v. Curry, 538 F.3d 718, 729 (7th Cir. 2008) (internal quotations omitted). Here, the issuing judge was entitled to infer that Defendant was using a cell phone when he spoke to the confidential source. It would be impractical to infer, in this modern age, that Defendant was using a landline phone at the grocery store.

It is also reasonable to infer that the cell phone found on Defendant at the time of his arrest was the same cell phone he used during the previous 72 hours. On April 18, 2018, Defendant was stopped by law enforcement. During the traffic stop, law enforcement found Defendant's cell phone. See d/e 20-2, p. 3 of 3. It is reasonable for the issuing judge to infer that the cell phone found on Defendant at the time of his arrest is a place where Defendant likely kept evidence, including the call that was made to the confidential source in the previous 72 hours.

Based on the totality of the circumstances, the affidavit supporting the Cell Phone Warrant set forth sufficient evidence to induce the issuing judge to conclude that there was probable cause to search the cell phone found during the traffic stop.

## B. In the Alternative, the Good Faith Exception Applies.

Magistrate Judge Schanzle-Haskins found that even if the two warrants were lacking probable cause, the evidence would still survive under the good faith exception. Defendant argues that the warrant is so lacking in probable cause as to render the officer's reliance on it unreasonable. For the reasons stated below, the Court agrees with Magistrate Schanzle-Haskins' determination.

Evidence seized pursuant to a warrant declared invalid is not subject to the exclusionary rule if the officers who executed the warrant relied in good faith on the issuing judge's finding of probable cause. United States v. Leon, 468 U.S. 897, 920-24 (1984). An officer's decision to obtain a warrant is prima facie evidence that he or she was acting in good faith. United States v. Searcy, 664 F.3d 1119, 1124 (7th Cir. 2011) (citing United States v. Otero, 495 F.3d 393, 398 (7th Cir. 2007)). To rebut the presumption, a defendant must show: (1) that the issuing judge

abandoned his or her detached and neutral role, (2) the officers were dishonest or reckless in preparing the affidavit, or (3) the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable.  Id.; see also Leon, 468 U.S. at 923.

In this case, law enforcement, through "Inspector Ebbing," obtained a search warrant.  See d/e 20-1 p. 1 of 3.  Therefore, Inspector Ebbing is presumed to have acted in good faith.

Defendant bears the burden of proving one of the exceptions to rebut the presumption in favor of good faith.  Defendant argues that the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable.  See d/e 24, p. 8 of 13.  To make his point, Defendant argues that if this affidavit is sufficient, then getting a warrant is meaningless.  Defendant made no claim that the issuing judge abandoned his or her detached and neutral role or that the officers were dishonest or reckless in preparing the affidavits.

The Court does not find that the warrants were so lacking in probable cause to render the officers' belief entirely unreasonable. The Court further finds that Defendant did not carry his burden in

rebutting the presumption that law enforcement acted in good faith. The evidence seized pursuant to the Residence Warrant and the Cell Phone Warrant are not subject to the exclusionary rule. <u>See</u> <u>United States v. Leon</u>, 468 U.S. at 920-24.

### III. CONCLUSION

For the reasons stated, the Objection (d/e 24) is OVERRULED. The Court ACCEPTS and ADOPTS the Report and Recommendation (d/e 23). The Motion to Suppress (d/e 20) is DENIED.

**ENTERED: January 8, 2020**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**